## S99A1671. BELLAMY v. THE STATE.
### (527 SE2d 867)

BENHAM, Chief Justice.
Police officers responding to a 911 call stating that a woman had been shot found George Bellamy sitting on the steps with the body of Colleen Nicole Carney, who had suffered a fatal gunshot wound to the face. At the scene, Bellamy told detectives that he was in the rear of Carney's home when she stepped outside to use the phone, and that he heard a gunshot from outside and looked down the hallway to see Carney stagger into the doorway and fall. However, when con-

fronted with evidence inconsistent with that story, Bellamy later told police that he had shot Carney by accident while they were playing around. He stated that Carney pulled a gun out from under a cushion and started waving it in front of him playfully, and that when he grabbed her arm and twisted it to get the gun away from her, the gun went off and a bullet struck her in the face. The detectives on the scene that night found the gun used in the shooting under the home. Bellamy also presented conflicting information regarding ownership of the gun: first, he told the police that the gun was there when he arrived; later he stated that he brought the gun to Carney's home, but it was not his; and finally he stated that the gun was his and that he did bring it to Carney's home, but he did not kill her. This appeal is from Bellamy's conviction for malice murder, possession of a firearm during commission of a crime, and possession of a firearm by a convicted felon.[1]

1. The evidence adduced at trial showed that Bellamy and Carney had a sometimes violent relationship; that shortly before her death, Carney thought she was pregnant, but did not want to bear the child because she already had an eight-month-old child; that Bellamy threatened in front of a witness to kill Carney if she had an abortion; that Bellamy lied to the police about the way in which the shooting occurred, changing his story several times as he was confronted with discrepancies between his stories and the evidence; that his final version, that the gun fired accidentally while he was trying to wrest it from Carney's hands as she played with it while she was seated on him where he lay on the couch, was inconsistent with the downward path of the bullet and the lack of gunpowder residue on her hands; and that Bellamy hid the gun after the shooting. That evidence was sufficient to authorize a rational trier of fact to find Bellamy guilty beyond a reasonable doubt of malice murder and possession of a firearm during commission of a crime, and coupled with evidence of Bellamy's status as a felon, the evidence was also sufficient to convict him of possession of a firearm by a convicted felon. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] The crimes were committed on August 20, 1997, and Bellamy was arrested that day. Indicted on November 4, 1997, for malice murder, felony murder (aggravated assault), felony murder (possession of a firearm by a convicted felon), voluntary manslaughter, possession of a firearm during commission of a crime, and possession of a firearm by a convicted felon, Bellamy was found guilty on September 16, 1998, of all charges other than voluntary manslaughter. The trial court sentenced him to life without parole as a recidivist for malice murder, and to two five-year terms, to be served consecutively, for the firearm possession offenses. The felony murder convictions were vacated by operation of law, though the sentence form in the record incorrectly shows acquittal on the felony murder counts. Bellamy's motion for new trial, filed September 30, 1998, and amended January 20, 1999, was denied by an order filed June 3, 1999. Pursuant to a notice of appeal filed June 15, 1999, the appeal was docketed in this Court on August 9, 1999, and was submitted for decision on the briefs.

2. Bellamy requested a charge on involuntary manslaughter and enumerates as error the refusal of the trial court to give the requested charge. He contends the charge was proper because there was evidence that he was engaged in the misdemeanor of reckless conduct by carelessly leaving his pistol where Carney could pick it up and by roughhousing with Carney while she held the gun. However, Bellamy's testimony at trial was that when he arrived at Carney's home, he asked her to put the gun away for him, and that it was she who was playing with the gun. His testimony was that his involvement with the gun was only to stop Carney from playing with it, and that it fired accidentally. Thus, Bellamy's testimony did not show that he committed any crime at all with regard to the discharge of the gun, while the State's evidence showed a deliberate fatal shooting. When, as here, evidence establishes either the commission of the crime charged, or the commission of no crime, the trial court is not required to charge the jury on an included offense. *Martin v. State*, 268 Ga. 682 (7) (492 SE2d 225) (1997).

3. Bellamy complains on appeal of the admission into evidence of two post-mortem photographs of Carney, one showing her face, including the entrance wound, and the other showing her legs with blood smears and handprints. Contrary to Bellamy's argument, the photograph of Carney's face was relevant to the issue of cause of death, and the photograph of her legs related to the truthfulness of Bellamy's account of his conduct after the shooting, including whether he dragged or carried Carney. Because the photographs were material and relevant to issues at trial, they were admissible. *Harris v. State*, 260 Ga. 860 (5) (401 SE2d 263) (1991).

4. In a colloquy with the trial court during jury deliberations, the jury foreperson asked whether the counts charging malice murder and felony murder were to be considered in the alternative. In response to a questioning look by the trial court, the prosecuting attorney answered the question, the trial court elaborated upon the answer and sent the jury back to deliberate, and Bellamy objected. On appeal, he contends that the State inappropriately injected the subject of punishment into the jury's deliberations. "It is improper for the court to give any instruction to the jury concerning possible sentences in a felony case before the jury has determined the question of guilt or innocence. [Cits.]" *Ford v. State*, 232 Ga. 511 (14) (207 SE2d 494) (1974). However, since neither the prosecuting attorney nor the trial court said anything to the jury pertaining to possible sentences for the crime charged, the issue of punishment was not inappropriately inserted into the jury's deliberations. *Fletcher v. State*, 197 Ga. App. 112 (3) (397 SE2d 605) (1990).

5. Bellamy contends that he was denied a fair trial because the prosecuting attorney made assertions of fact in the opening state-

ment that could not be or were not established by the evidence. In *Alexander v. State*, 270 Ga. 346 (2) (509 SE2d 56) (1998), we held that opening statements by the State should be confined to an outline of what the State expects admissible evidence will prove at trial, and that even if the opening statement departs from those guidelines, a conviction will not be reversed if the State acted in good faith and if the trial court instructed the jury that the State's opening statement is not evidence and has no probative value. We need not consider the good faith of the prosecutor in this case, or the effect of the trial court's instruction that opening statements are not evidence, because the prosecution's opening statement was not subject to the argument raised on appeal. Our review of the transcript reveals that the prosecution presented evidence intended to establish every one of the matters which Bellamy enumerates as improper. Thus, the present case is unlike *Alexander*, where the prosecution's opening statement described in detail alleged connections between the crime and gang activities, but there was no attempt to prove the gang-related assertions. By contrast, the prosecuting attorney in the present case set forth in the opening statement what the State intended to prove, and then adduced evidence aimed at proving the specifics of the opening statement's outline. No error appears in regard to the prosecution's opening statement.

6. The trial court charged the jury on the crimes set forth in the indictment in the order in which they appeared. As to the fourth count, voluntary manslaughter, Bellamy contends the trial court erred in giving a sequential charge in violation of this Court's holding in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992). However, that contention fails because Bellamy was convicted of malice murder, and "there can be no harmful *Edge* violation when the jury convicts on a malice murder charge." *Taylor v. State*, 271 Ga. 497 (2) (521 SE2d 814) (1999); *McGill v. State*, 263 Ga. 81 (3) (428 SE2d 341) (1993).

Bellamy also argues that the charge denied him a fair trial by requiring the jury to consider voluntary manslaughter as an included offense rather than as a separate count of the indictment. No rationale is offered to support that assertion, and we fail to see how the trial court's instruction could have had the effect Bellamy ascribes to it. The trial court read the indictment, which contained voluntary manslaughter as one count, and defined the offense. Nowhere in the charge did the trial court suggest that voluntary manslaughter be considered as an included offense of any other offense. Bellamy's complaints regarding the jury charge are without merit.

7. Bellamy complains on appeal that the trial court erred in admitting hearsay testimony to the effect that Bellamy had physically abused Carney and had threatened to kill her if she became

pregnant with his child and had an abortion. Assuming that Bellamy is correct that the testimony did not meet the requirements of the "necessity" exception to the hearsay rule (see *Ward v. State*, 271 Ga. 648 (2) (520 SE2d 205) (1999)), we conclude in light of the overwhelming evidence of guilt that any error in the admission of the testimony was harmless because it was cumulative of the testimony of witnesses who testified they had personally witnessed either physical abuse of Carney by Bellamy or a threat by him to kill her if she got pregnant with his child and had an abortion. See *Bridges v. State*, 268 Ga. 700 (6) (492 SE2d 877) (1997); *Jenkins v. State*, 268 Ga. 468 (3) (491 SE2d 54) (1997); *Roberson v. State*, 214 Ga. App. 208 (7) (447 SE2d 640) (1994).

8. Bellamy's complaint regarding the sufficiency of proof of his prior conviction of a felony is based on the trial court's admission of a certified copy of Bellamy's previous conviction for possession of cocaine. However, Bellamy's parole officer testified without objection that he was supervising Bellamy's parole for a possession of cocaine conviction, and Bellamy, in explaining why he had lied to the police, admitted to being a convicted felon. Thus, pretermitting any problems with the form of the certified copy, Bellamy's complaint is without merit because his parole officer's testimony, in the absence of a best evidence objection, was evidence of a prior felony conviction (see *McIntyre v. State*, 266 Ga. 7 (4) (463 SE2d 476) (1995)), and Bellamy's "own testimony provides overwhelming evidence of his guilt of the offense. . . ." *Martin v. State*, 268 Ga. 682 (3) (492 SE2d 225) (1997).

9. Bellamy's assertion that the trial court erred in admitting evidence of a similar transaction is based on his claim that the previous crime was not sufficiently similar.

> The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence "may be admitted if it ' "is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character." ' " [Cit.]

*Maggard v. State*, 259 Ga. 291 (2) (380 SE2d 259) (1989). The similar transaction evidence admitted in the present case showed that Bellamy pleaded guilty to battery after he threw a bottle through a window at his then-girlfriend with whom he was arguing, causing a cut on her arm. The State offered the evidence to show intent and bent of mind. Thus, here, as was the case in *Maggard*, "the admissibility rests on the question of whether the evidence tends to prove intent or lack of mistake." Id. The State offered the evidence to show that Bel-

lamy, when arguing with women, lashes out violently, which suggests he intended to inflict the harm for which he was on trial in the present case. We agree with the trial court's ruling that the prior transaction was sufficiently similar when offered for that purpose.

10. Contending that trial counsel should have challenged a juror for cause, Bellamy contends he was denied effective assistance of counsel. The record shows that an attorney other than trial counsel was appointed to represent Bellamy in post-conviction matters. That counsel raised in the motion for new trial several allegations of ineffectiveness by trial counsel, but not the claim Bellamy, now acting pro se, seeks to assert on appeal. All contentions of ineffectiveness not raised on motion for new trial by counsel appointed to represent Bellamy after conviction are waived. *Spear v. State*, 270 Ga. 628 (5) (513 SE2d 489) (1999); *Bagwell v. State*, 270 Ga. 175 (1) (f) (508 SE2d 385) (1998).

11. As to two of the three portions of the prosecuting attorney's closing argument which Bellamy contends were improper, no objection was raised at trial, which waives the right to complain on appeal. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999). In the third portion of the argument complained of on appeal, the prosecuting attorney inquired, "[W]ho is he accidentally going to hurt next?" That is clearly an argument on future dangerousness such as was forbidden in *Sterling v. State*, 267 Ga. 209 (2) (477 SE2d 807) (1996), and the trial court erred in overruling Bellamy's objection to that argument. However, we conclude the error was harmless because the overwhelming evidence supporting the verdict renders it highly unlikely that this portion of the argument contributed to the verdict. *Carter v. State*, 269 Ga. 891 (5) (506 SE2d 124) (1998); *McClain v. State*, 267 Ga. 378 (3) (a) (477 SE2d 814) (1996); *Cherry v. State*, 230 Ga. App. 443 (5) (496 SE2d 764) (1998).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 6, 2000.

George Bellamy, *pro se.*

*J. Gray Conger, District Attorney, LaRae A. Dixon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wesley S. Wood, Assistant Attorney General*, for appellee.